# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.<br><br>   Plaintiffs,<br><br>   v.<br><br>SENSAPHONICS, INC.<br><br>   Defendants. | Case No. ___<br><br>CASE IN OTHER COURT:<br>*Staton Techiya, LLC and Synergy IP Corp. v. Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*, 2:21-cv-00413-JRG-RSP (Lead Case), 2:22-cv-00053-JRG-RSP (Member Case) |

**SAMSUNG'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM THIRD-PARTY SENSAPHONICS, INC.**

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | BACKGROUND | | 2 |
| III. | LEGAL STANDARD | | 5 |
| IV. | ARGUMENT | | 6 |
| | A. | Samsung Seeks Relevant And Discoverable Information About Sensaphonics's Prior Art Products | 6 |
| | B. | Sensaphonics Completely Failed to Meet Its Obligations | 10 |
| | | 1. Sensaphonics's Burden Objections Are Meritless | 10 |
| | | 2. Sensaphonics's Objections Regarding Confidentiality Are Meritless | 12 |
| | C. | Sensaphonics Waived Its Objections | 13 |
| V. | CONCLUSION | | 14 |

## I. INTRODUCTION

This is an action to compel Sensaphonics, Inc. ("Sensaphonics") to produce documents in response to a duly issued and served subpoena. In a pending patent infringement case in the United States District Court for the Eastern District of Texas, plaintiffs Staton Techiya, LLC and Synergy IP Corporation ("Techiya") accuse Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") of infringing fourteen patents by making and selling the Galaxy Buds® earphone products[1] and seek significant damages for the alleged infringement.

As one of its defenses, Samsung contends that Techiya's patents are invalid because products in the market well before Techiya even applied for the patents had features that practice the technology covered by the patents. This includes certain products sold by Sensaphonics, including the 3D Active Ambient IEM system. Sensaphonics, based in Chicago, Illinois, has been manufacturing and selling in-ear headsets with features that are directly at issue in Techiya's patents, such as the ability to mix ambient sound with the audio content signal, and presenting that mixture to the user.

Samsung sought discovery from Sensaphonics about the relevant products by serving a Fed. R. Civ. P. 45 subpoena. In response, Sensaphonics produced only *two* documents—which fail to address much of the subject matter at issue—and refused to provide anything more, referring Samsung to the internet and to an unspecified list of third parties for more information. Notably, Sensaphonics neither disputes the relevance of the requested discovery nor states that responsive information and documents no longer exist. It simply refuses to adequately comply with the subpoena under vague and conclusory burden objections.

---

[1] The patents-in-suit are U.S. Patent Nos. 8,111,839, 8,254,591, 8,315,400, 9,124,982, 9,270,244, 9,491,542, 9,609,424, 10,405,082, 10,966,015, 10,979,836, 11,039,259, 11,057,701, 11,217,237, and 11,244,666.

1

As explained below, Sensaphonics's objections are improper. Moreover, Sensaphonics has waived any objections it might have to Samsung's subpoena because it failed to serve them in time. At bottom, Sensaphonics's objections boil down to simply seeking to avoid the modest effort of complying with a duly issued subpoena. In light of the undisputed relevance of the discovery to Samsung's invalidity defenses, and Sensaphonics's failure to comply with the subpoena, Samsung respectfully requests that the Court order Sensaphonics to produce the requested documents and information.

## II. BACKGROUND

On November 5, 2021, Techiya filed this patent infringement action in the Eastern District of Texas alleging that Samsung infringes ten patents relating to technology used on earphones by making, offering for sale, and selling the Galaxy Buds® suite of earphones products. *See generally* Techiya I,[2] Dkt. 1. On February 14, 2022, Techiya filed yet another case against the Buds products asserting four additional patents. The two cases have been consolidated. *See* Techiya II,[3] Dkt. 1; Techiya I, Dkt. 47.

The patents-in-suit relate to earphone technology, including earphone devices with functionality for capturing ambient sound for the wearer to hear, performing voice detection by analyzing audio signals, for noise cancellation to minimize unwanted sounds for the wearer, as well as the ability to adjust the levels of other audio signals (*e.g.*, music) that the wearer hears. Several of the patents relate to earphone devices that include microphones for capturing ambient sound (*i.e.*, sounds in the environment around an individual, such as wind noise, a car horn, or

---

[2] References to "Techiya I" refer to *Staton Techiya, LLC and Synergy IP Corporation v. Samsung Electronics Co., Ltd. et al.*, Civil Action No. 2:21-cv-413 (E.D. Tex. 2021).

[3] References to "Techiya II" refer to *Staton Techiya, LLC et. al v. Samsung Electronics Co., Ltd. at al.*, Civil Action No. 2:22-cv-00053 (E.D. Tex. 2022).

voices) and that analyze the sound to, *e.g.*, detect voice or a certain noise level. Some of the patents-in-suit require a single microphone as part of the earpiece, while other patents require more than one, such as an "ambient sound microphone" and an "ear canal microphone."

Sensaphonics developed and sold products with features highly similar to those claimed in the patents-in-suit well before Techiya applied for the patents. For example, Sensaphonics manufactured and sold the "3D Active Ambient IEM system" ("3DAA") in the mid-2000's, which includes an earpiece that permits the wearer to hear ambient sound.[4] Samsung believes that Sensaphonics also designed other similar products that are germane to the patents-in-suit. Sensaphonics remains in business today and appears to sell modernized versions of the 3DAA to musicians and other stage performers, advertising that such products "use[] Active Ambient technology so IEM users can hear their surroundings."[5]

On August 26, 2022, Samsung served Sensaphonics with subpoenas for documents and a deposition relating to relevant products sold before Techiya's patents. Exs. 1, 7; Boloori Decl.,[6] ¶ 1. On August 31, 2022, counsel for Sensaphonics contacted Samsung's outside counsel by telephone to discuss the subpoenas and to request copies of the public pleadings and the patents-in-suit. *Id.*, ¶¶ 2–3. Samsung provided the materials to counsel the next day. *Id.*, ¶ 4. Pursuant to Fed. R. Civ. P. 45(d)(2)(B), Sensaphonics's written objections to the subpoena were due by September 9, 2022, but Sensaphonics did not contact Samsung again until September 27, 2022, when Sensaphonics's counsel again called Samsung and stated that other counsel would be

---

[4] Sensaphonics's website provides several webpages of discussion regarding the 3DAA. *See, e.g.*, https://www.mixonline.com/technology/sensaphonics-3d-active-ambient-ear-system-370338.

[5] *See, e.g.*, https://www.sensaphonics.com/products/3dme-custom-tour-gen2-music-enhancement-iem-system (Sensaphonics product website for "3DME Custom Tour Gen2 Music Enhancement IEM System").

[6] References to the "Boloori Decl." refer to the Declaration of Ali-Reza Boloori In Support Of Samsung's Motion To Compel Discovery From Third-Party Sensaphonics, Inc., filed contemporaneously herewith.

representing Sensaphonics in connection with Samsung's subpoenas. *Id.*, ¶ 5. Moments after the call ended, Sensaphonics's new counsel served Samsung with a letter including written objections to the subpoenas. *Id.*, ¶ 6; Ex. 2.

On October 5, 2022, Samsung wrote to Sensaphonics to explain that Sensaphonics's objections were vague and conclusory, and requested a meet-and-confer. Ex. 4 at 10. On October 11, 2022, the parties met and conferred, at which time Samsung's outside counsel provided an explanation of the case, the information sought by the subpoenas, the types of documents that could provide the information, and the specific earphone functionalities relevant to the patents-in-suit. Ex. 4 at 8–9. To help pinpoint the relevant products and ease Sensaphonics's search, Samsung's counsel requested a list or brochure identifying the other Sensaphonics products offered for sale during the relevant time period (in addition to the 3DAA) for Samsung to evaluate for potential relevancy. *Id.* Sensaphonics's counsel agreed to consider Samsung's request for this information.

Despite multiple follow-up correspondences from Samsung and ample time to conduct searches, Sensaphonics has refused to provide Samsung with virtually any discovery concerning the 3DAA or other Sensaphonics products. *See, e.g.*, Ex. 3. Sensaphonics has produced only ***two*** documents for the 3DAA: (1) a marketing flyer; and (2) a copy of a 2012 U.S. patent. Exs. 5, 6. These documents do not address much of the subject matter at issue in the subpoena. Although Sensaphonics's counsel has made several representations regarding the public availability of the 3DAA, Sensaphonics has refused to produce any documents evidencing such facts. Ex. 4 at 7–8. With regard to other products offered for sale, sold, or made publicly available by Sensaphonics, Sensaphonics's counsel directed Samsung to the "Wayback Machine: waybackma[c]hine.com" and "other companies." *Id.* at 6–8. As Samsung subsequently explained, this response was

4

improper as the Wayback Machine is an internet archive containing a vast amount of archived web pages. *Id.* at 1–2. Samsung nevertheless made efforts to locate responsive information using the Wayback Machine, but was not successful.

The parties conducted another meet-and-confer on November 11, 2022 to discuss Sensaphonics's refusal to provide discovery. Ex. 4 at 3–5. As before, Sensaphonics made no clear representation that it had conducted a reasonable search or that responsive documents could not be found. Instead, Sensaphonics simply declined to reconsider its refusal to search for responsive documents. Samsung and Sensaphonics are thus at an impasse. Fact discovery in the Eastern District of Texas litigation will close in just six weeks.[7]

### III. LEGAL STANDARD

Rule 45 authorizes issuance of a subpoena to command a non-party to produce documents and electronically stored information in its possession, custody, or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 45, Advis. Comm. Notes for 1991 Amendments ("The non-party witness is subject to the same scope of discovery under this [R]ule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). "If discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Doe v. Loyola University Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020). Further, where the discovery is proportional to the needs of the case, discovery from a third party should be ordered. *Id.* at *2, *5–6.

---

[7] *See* Techiya I, Dkt. 43 (setting close of fact discovery for January 30, 2023).

5

Courts routinely order the production of information relevant to invalidity defenses raised by accused patent infringers, including regarding prior art products like those at issue here. *See, e.g., Sloan v. Zurn*, No. 10 C 204, 2012 WL 1237744, at *9 (N.D. Ill. Apr. 12, 2012) (ordering production of "all relevant, non-privileged documents related to [Defendant's invalidity] defense"); *Stepan Co. v. Oxid L.P.*, No. 02 C 9064, 2003 WL 22742451, at *1 (N.D. Ill. Nov. 19, 2003) (granting motion to compel production of patents and patent applications providing information "relevant to [Defendant's] invalidity defenses/counterclaims, potential unenforceability, and as potential sources of prior art and admissions"); *Intertech Resources, Inc. v. Vital Signs, Inc.*, No. 94 C 5758, 1996 WL 637860, at *4 (N.D. Ill. Nov. 1, 1996) (finding discovery appropriate regarding system art reference asserted by defendant as invalidating prior art); *Symantec Corp. v. Sidman*, Case No. 14–mc–80094 JST (NC), 2014 WL 1652921, at *3–4 (N.D. Cal. Apr. 24, 2014) (granting motion to compel discovery concerning information about prior art product); *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, Civil No. 14–3103 (SRN/FLN), 2015 WL 12780467, at *1–2 (D. Minn. Dec. 3, 2015) (concluding documents concerning prior art product "are relevant and must be produced").

IV.  **ARGUMENT**

As explained below, the requested discovery is relevant, not burdensome, and indeed routine in patent cases.

   A.  **Samsung Seeks Relevant And Discoverable Information About Sensaphonics's Prior Art Products**

Samsung's subpoena seeks information regarding the 3DAA and other Sensaphonics prior art products sold, offered for sale, and/or made publicly available by Sensaphonics before a specific cut-off date (January 22, 2007). The January 22, 2007 temporal limitation is based on the

6

priority dates of certain patents-in-suit for which these products are prior art. The requests at issue (reproduced below) are tailored to procure information about relevant prior art products:[8]

- **Request No. 1**: All documents including but not limited to product literature, product manuals (including service, training, operation, maintenance, or parts manuals), brochures, marketing materials, and technical and product specifications concerning the Sensaphonics Prior Art Products.

- **Request No. 3**: Documents sufficient to show the date of first public use, demonstration, sale, and/or offer for sale anywhere in the United States of the Sensaphonics Prior Art Products before January 22, 2007.

- **Request No. 4**: Documents sufficient [to show] design, implementation, and/or operation of the Sensaphonics Prior Art Products, including documents that show: (1) the number, location, and/or orientation of any microphone on each product; (2) audio buffers; (3) DSPs; and (4) the processing of audio signals on the device, including any noise and/or echo suppression and/or cancellation mechanisms, as well as any signal mixing and voice detection mechanisms.

- **Request No. 5**: All source code concerning the operation, implementation, or design of the Sensaphonics Prior Art Products.

- **Request No. 6**: Copies of compiled, executable firmware used with the Sensaphonics Prior Art Products, and the date of compilation.

- **Request No. 7**: A physical sample of each Sensaphonics Prior Art Product identified by You.

Ex. 1 at *12.[9]

The requested documents and testimony are plainly relevant to Samsung's invalidity defense. They concern the functionality and public availability of Sensaphonics's prior art products, which appear to contain some of the very same technologies allegedly "invented" by Techiya years later. This is relevant for at least two reasons. *First,* a patent is not novel if "the

---

[8] Consistent with these goals, Samsung also defined "Sensaphonics Prior Art Products" as used in the requests as "any headphone product (e.g., earbuds, earphone, earpiece, headset, hearing aid, or media players comprising such headphone product) that includes one or more microphones, and that was in public use, on sale, or otherwise available to the public before January 22, 2007, including but not limited to the 3D Active Ambient IEM." Ex. 1 at *10.

[9] Non-consecutively paginated exhibits are pincited with a *.

7

claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1).[10] *Second,* a patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1340–41 (Fed. Cir. 2010) (quoting 35 U.S.C. § 103(a)). Determining whether an invention is obvious involves considering "the scope and content of the prior art" and "the differences between the [claimed invention] and the prior art." *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 03-C-7713, 2008 WL 4083145, at *5–7 (N.D. Ill. Aug. 27, 2008) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). The information sought by these subpoenas will bear directly on the "scope and content" of the prior art, including what that prior art was, how it worked, when it came to be, and when it was given to the public.

Samsung's requests are specifically tied to advancing discovery on the technical details and public availability of Sensaphonics's products. Request Nos. 1, 4, 5, and 6 seek technical documents showing the design and operation of the relevant Sensaphonics's products, such as technical specifications, product manuals, and other product literature, as well as the source code for these Sensaphonics products.[11] This information would prove the operation of the Sensaphonics products so that Samsung can show that they render Techiya's patents invalid.

---

[10] Because many of the patents-in-suit trace priority to patent applications filed prior to March 2013, they are subject to pre-AIA legal standards. *See* 35 U.S.C. 102 (pre-AIA). Under pre-AIA § 102, a patent is not novel, for example, if "the invention was known or used by others in this country" or "the invention was … in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." *Id.* §§ 102(a), (b).

[11] Indeed, Samsung explained to Sensaphonics during a meet and confer that it was specifically seeking documents explaining how Sensaphonics's products work. Ex. 4 at 8.

Similarly, a physical sample(s) of Sensaphonics's products (or an opportunity to inspect samples) will allow Samsung to observe and test the functionality.

Further, to prove public availability and/or sale of the relevant products, Request No. 3 seeks documents showing the sale, offer for sale, and/or public availability and use of the prior art products—elements that are required to prove that the products qualify as prior art under the patent statute. *See, e.g., Pfaff v. Wells Elecs., Inc.*, 124 F.3d 1429, 1432–34 (Fed. Cir. 1997); *Weatherchem Corp. v. J.L. Clark, Inc.*, 163 F.3d 1326, 1332–34 (Fed. Cir. 1998); *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1332–1335 (Fed. Cir. 2005).

Even in its belated objections, Sensaphonics did not contest the relevance of the requested discovery. It raised supposed relevancy concerns for the first time nearly ***two months*** after serving its objections. Beyond its tardiness, Sensaphonics contests something that Samsung is ***not*** requesting— "all of [Sensaphonics's] sales information following the first date of sale." Ex. 4 at 6. Instead, Request No. 3 is specifically tailored to seek documents regarding the "first" public use, demonstration, sale, and/or offer for sale of Sensaphonics's products. *Compare* Ex. 4 at 6 *with* Ex. 1 at *12. Sensaphonics's counsel even concedes the relevance of such documents and information, agreeing that information regarding "the first date of sale" is "all that is required for establishing a first date of sale for prior art purposes." Ex. 4 at 6. Weeks later, Sensaphonics raised another relevancy objection, now directed at "the other electronic items that Sensaphonics sells," yet failed to provide any credible explanation supporting the alleged categorical irrelevancy of other Sensaphonics prior art products which appear to use similar technology. *See id.* at 2–3.

Instead, Sensaphonics objected "[i]n general" to the requests as "overly broad requests that would be placing an undue burden and expense on Sensaphonics" and that "[a] response to the subpoena would require Sensaphonics to search for documents in connection with products from

fifteen years ago and earlier," but did not contest relevancy. Ex. 2 at 1. Sensaphonics also objects to the subpoenas as seeking confidential and trade secret information and documents. *Id*. at 1–2. As explained below, these objections fail to provide a basis for non-compliance with the subpoena.

### B. Sensaphonics Completely Failed to Meet Its Obligations

As the recipient of a subpoena, Sensaphonics could only resist a subpoena request by showing that it is improper. Fed. R. Civ. P. 45(e)(1)(D); *Kodish v. Oakbrook Terrace First Protection District*, 235 F.R.D. 447, 450 (N.D. Ill. 2006); *BankDirect Capital Finance, LLC v. Capital Premium Financing, Inc.*, No. 15 C 10340, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) ("The party resisting discovery 'must show *specifically* … how each [request] is not relevant or how each question is overly broad, burdensome or oppressive.'") (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485* (5th Cir. 1990)); *see also Blagman v. Apple Inc.*, No. CV 13-8496-PSG (PLAx), 2014 WL 12607841, at *3 (C.D. Cal. Jan. 6, 2014) ("[i]t is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery" and "[the objecting party] cannot simply invoke generalized objections"). As explained here, Sensaphonics has failed to make any such showing.

#### 1. Sensaphonics's Burden Objections Are Meritless

Although Sensaphonics objects to the subpoena as "overly broad and burdensome," it has merely repeated the same boilerplate without offering any rationale for its objections.

As an initial matter, the subpoenas are properly tailored: they limit their requests to information and documents concerning products sold, offered for sale, or made publicly available before January 22, 2007, including the specific 3DAA product. Ex. 1. Moreover, Samsung narrowed its requests even further to help Sensaphonics in any searching it must do. Specifically, Samsung explained that it specifically sought products that include signal mixing and/or voice detection functionalities. Ex. 4 at 8–9. To further minimize any burden on Sensaphonics, Samsung

10

asked that—before producing any documents—Sensaphonics identify which products fall within the scope of Samsung's requests so that Samsung can further narrow the scope of the subpoena by eliminating products that do not appear relevant. *Id.* But Sensaphonics refused to provide any such information.

Further, it is apparent from the parties' discussions that Sensaphonics has not conducted a reasonable search for responsive documents. When asked about the nature and scope of its searching efforts, Sensaphonics was unable to affirmatively discuss the details, such as what responsive documents existed. Instead, Sensaphonics has merely speculated that "those documents ***wouldn't*** exist" or that "no documents, just by themselves" can provide the information Samsung is seeking. *Id.* at 2–4. Despite the parties' correspondence on these issues, Sensaphonics has also failed to represent in writing that it conducted reasonable searches for responsive documents.

Sensaphonics's objections are improper. *First,* Sensaphonics's written responses to Samsung's requests were limited to the same repeated boilerplate response, devoid of any relevancy objection: "Sensaphonics objects to this Request as overly broad and as placing an undue burden and expense on Sensaphonics." These objections are insufficient on their face. *See, e.g., Fudali v. Napolitano*, 283 F.R.D. 400, 403–404 (N.D. Ill. 2012) (finding "uninformative litany" of objections that "the requests were overbroad" and "production of documents unduly burdensome" where "[n]o specifics were given" was "an insufficient basis to refuse to comply with discovery"); *Swift v. First USA Bank*, No. 98 C 8238, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999) (ordering discovery over "the same baseless, often abused litany" of objections).

*Second,* Sensaphonics claims that Samsung's "overly broad demand" seeks "all technical and sales information regarding other products sold by Sensaphonics" and "just about all of the

11

companies' documents from its inception, in 1993, until January 22, 2007." Leaving aside the greatly exaggerated nature of this assertion and Sensaphonics's refusal to work with Samsung on narrowing the scope of products at issue, Sensaphonics makes no attempt to quantify the alleged burden it might face, such as an approximate size of the data it must search or the number of custodians who would have responsive documents. *See* Ex. 4 at 6, 9–10. This is improper, as "one claiming undue burden must do more than intone the phrase." *Pabst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *3–4 (N.D. Ill. Apr. 4, 2017) (denying motion to quash subpoena where recipient "made no attempt to explain, let alone prove, why the burden on him is undue" or "paused even to explain what the undue burden is").

*Third,* Sensaphonics incorrectly claims Samsung requests "all of [Sensaphonics's] sales information following the first date of sale" and "all current and past items offer [sic] for sale by Sensaphonics." Sensaphonics blatantly ignores the plain text of Samsung's requests, which are limited to documents "***sufficient*** to show the date of ***first*** public use, demonstration, sale, and/or offer for sale." Ex. 4 at 6; Ex. 1 at *12. This information could easily be provided through evidence such as a sales receipt, invoice, or pricing sheet from the relevant time period—yet Sensaphonics categorically refuses to produce this information, without justification.[12]

### 2. Sensaphonics's Objections Regarding Confidentiality Are Meritless

Sensaphonics also objects that "the documents requested include highly confidential source code and firmware that is proprietary to Sensaphonics" and the requests "seek[] highly confidential and trade secret information and documents." Ex. 2 at 1. However, the Eastern District of Texas

---

[12] After the parties met and conferred regarding Sensaphonics's refusal to provide discovery, Sensaphonics offered for the first time to provide Samsung with an affidavit. *See* Ex. 4 at 2–3. To the extent Sensaphonics argues that Samsung somehow increased its burden by refusing to accept the affidavit, that argument is meritless. As Samsung explained, it would be far more burdensome to prepare an affidavit—if even possible—describing the detailed technical aspects of Sensaphonics's products, as well as their public availability, than simply producing underlying documents and information responsive to the subpoena. *See* Ex. 4 at 1.

court has entered a Protective Order that provides for the protection of sensitive material as well as source code, a copy of which was provided to Sensaphonics. Ex. 1, at *19–34, ¶¶ 8, 10.

### C. Sensaphonics Waived Its Objections

Sensaphonics is also improperly standing on objections that it has waived. Sensaphonics failed to serve written objections within the 14-day deadline to do so under Rule 45. Objections to a subpoena must be served "before the earlier of the time specified for compliance or 14 days after the subpoenas [was] served." Fed. R. Civ. P. 45(d)(2)(B). Failure to do so constitutes a waiver. *See Young v. City of Chicago*, Case No. 13-C-5651, 2017 WL 25170, at *6–8 (N.D. Ill. Jan. 3, 2017) (finding waiver of objections where defendant failed to timely serve objections); *see also Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917, at *1 (N.D. Ill. Nov. 14, 1994) (finding waiver of objections where subpoena recipients filed untimely objections).

Samsung served Sensaphonics with the subpoenas on August 26, 2022. Exs. 1, 7. The subpoenas provided a 25-day period for Sensaphonics to complete its production (*i.e.*, by September 20, 2022). *Id.* at 5. Sensaphonics therefore could serve its written objections by September 9, 2022—14 days after service. Fed. R. Civ. P. 45(d)(2)(B). Although Sensaphonics was well-aware of the subpoenas and had its counsel contact Samsung shortly after receiving them, it did not provide written objections until September 27, 2022. Boloori Decl., ¶¶ 2–6; Ex. 2. Nor did the parties agree to extend the objections deadline before it lapsed. Boloori Decl., ¶ 3. Accordingly, Sensaphonics's objections were served after the deadline and were waived. *See Young*, 2017 WL 25170, at *6–8; *see also Brogren*, 1994 WL 654917, at *1.

*Second,* Sensaphonics waived its objections because they were improper. This Court has stated that "[o]bjections must not only be timely, they must be proper, or the result is waiver." *Hobley v. Chicago Police Commander Burge*, No. 03 C 3678, 2003 WL 22682362, at *4 (N.D. Ill. Nov. 12, 2003). "An objection to discovery is not satisfied by the invocation of routinized

13

boilerplate objections rather than actually showing why a discovery request is improper." *BankDirect*, 2017 WL 5890923, at *2 ("[C]ourt after court has rejected these unadorned boilerplate 'objections' as tantamount to no objections at all."); *Extended Care Clinical v. Scottsdale Insurance*, Case. No. 20-C-7132, 2021 WL 2894163, at *2 (N.D. Ill. Jul. 8, 2021); *Leibovitz v. City of New York*, No. 15 Civ. 546, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) (collecting cases and striking boilerplate objections). The burden to show why a discovery request is improper lies with the subpoenaed party—Sensaphonics. *Blagman*, 2014 WL 12607841, at *3 ("[i]t is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery" and "[the objecting party] cannot simply invoke generalized objections.").

Sensaphonics, however, asserts boilerplate objections that lack any explanation informing Samsung of the basis for the objections. Sensaphonics objected "[i]n general" that the requests are "overly broad" and "plac[e] an undue burden and expense" on Sensaphonics, *see* Ex. 2 at 1–3, but provided no explanation as to how the discovery sought is unduly prejudicial or costly, particularly in light of Samsung's narrowing of its requests to attempt to work with Sensaphonics. Sensaphonics also provided generalized assertions that the requests seek "highly confidential and trade secret" information, *id.*, yet failed to specify what alleged "trade secrets" it refers to and fails to explain why the protective order that governs the disclosure of confidential information in the underlying litigation does not adequately protect Sensaphonics's confidentiality interests, if any. Sensaphonics's objections to individual requests merely mirror this language nearly verbatim, and are therefore equally improper.

## V. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court order Sensaphonics to: (i) conduct a reasonable search for responsive documents; (ii) produce all responsive documents located through that search within 14 days of the Court's order; and (iii)

14

produce a privilege log of documents withheld on the basis of privilege and/or work product within 7 days after its production.

| | |
|---|---|
| Dated: December 22, 2022 | */s/  David Rokach* |
| | David Rokach |
| | KIRKLAND & ELLIS LLP |
| | 300 North LaSalle |
| | Chicago, IL 60654 |
| | Telephone: (312) 862-2000 |
| | Facsimile: (312) 862-2200 |
| | Email: david.rokach@kirkland.com |
| | |
| | Ali-Reza Boloori (*pro hac vice* to be filed) |
| | KIRKLAND & ELLIS LLP |
| | 2049 Century Park East, Suite 3700 |
| | Los Angeles, CA 90067 |
| | Telephone: (310) 552-4200 |
| | Facsimile: (310) 552-5900 |
| | Email: ali-reza.boloori@kirkland.com |
| | |
| | Peter J. Evangelatos (*pro hac vice* to be filed) |
| | KIRKLAND & ELLIS LLP |
| | 601 Lexington Avenue |
| | New York, NY 10022 |
| | Telephone: (212) 446-4800 |
| | Facsimile: (212) 446-4900 |
| | Email: peter.evangelatos@kirkland.com |
| | |
| | *Attorneys for Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.* |